## Good, Appellant, *v.* Sworob.

Argued January 4, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*William T. Steerman,* with him *Herman Steerman,* and *Zarwin, Prince, Baum, and Steerman,* for appellant.

*Michael C. Rainone,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 22, 1966:

A legal controversy is a battle. It may not be bloody, no bodies are carried off the field of action, but in all essentials it is a determined conflict in which each side seeks to gain victory over the other. However, as in warfare, the contending parties in a law battle often seek to resolve their differences without going into the final hand-to-hand encounter when there may not be left enough for either side to claim victory or glory. During these armistices in war or in law, neither side is to fire a hostile shot or clandestinely move troops.

The parties in this litigation agreed to an armistice. Under a flag of truce they met, talked, conferred, negotiated, and tacitly agreed to meet again. Then one side, without notifying the other of its intention to resume hostilities, rushed into the controverted terrain and grabbed what was in dispute. We are called upon to determine whether this was legal.

Specifically and objectively, Wm. F. Good, on July 20, 1964, instituted an action in equity against Joseph

P. Sworob to enforce an alleged partnership agreement. On July 24th a preliminary injunction issued to hold matters in status quo. On August 11th, the attorney for the defendant met with the attorney for the plaintiff and they discussed the desirability of settlement, both sides agreeing that this was possible and probable. They definitively agreed to postpone a hearing on the injunction proceedings for 30 days, that is, until September 12th, pending a hoped-for final settlement.

On September 9th, three days before the expiration of that waiting period, the contending counsel met again. Once more they explored the various avenues for an amicable meeting of the minds on the disputed issues. Offers and counteroffers were submitted by both sides, but no definitive conclusion was reached. However, both sides agreed that the case would not be listed for disposition in court automatically, but would be ordered down by praecipe, and that, when that was to take place, the attorney for the plaintiff would inform the attorney for the defendant to that effect. They separated with the flag of truce still flying.

According to the original agreement, the 30-day delay in the hearing on the injunction would hold up proceedings until September 12th, which date fell on a Saturday. On September 15th, at 9:29 a.m., a minute before the prothonotary opened his office for business, the plaintiff entered judgment against the defendant for failure to file an answer. Technically he was authorized to do this, but under the rules of fairness which attorneys respect in situations of this kind, the defendant was entitled to notice of the plaintiff's intentions so that he would have an opportunity to file his answer. At the conference on September 12th, there were no ultimatums exchanged, there was no noisy slamming of sabers back into the scabbards from which they had been withdrawn for the purpose of the peaceful discussion.

Counsel for the defendant filed a petition to open judgment, averring that he had been persuaded by the plaintiff into believing that the door was still open for negotiation and final settlement, and that he had a meritorious defense to the plaintiff's claim:

After the taking of depositions, the court opened the judgment stating: "Plaintiff's action in taking the judgment by default was manifestly unfair. A preliminary injunction had been in effect at least until September 12, 1964. The status quo was maintained, and counsel were exploring settlement three days prior to the expiration of the injunction and six days prior to the entry of the default judgment. Considering all of the facts it appears that defendant was lulled into a false sense of security and plaintiff cannot be permitted to retain his default judgment obtained in this fashion. One further step would not have been unreasonable, i.e., notice of intention to act by a certain date."

In an appeal of this character our scope of review is limited to determining whether the court below abused its discretion in opening the judgment. (*Smith v. Dale*, 405 Pa. 293, 296, 297.).

In *Wheel v. Park Bldg.*, 412 Pa. 545, we stated: "A long line of cases has established the principles that (1) relief will be given to one against whom a default judgment has been taken where a petition is promptly filed, the default reasonably explained or excused, and a defense shown to exist upon the merits; and (2) an order making absolute a rule to open judgment entered by default and to let defendant into a defense will be reversed on appeal only where there has been a clear manifest abuse of discretion by the court below."

The record shows that the defendant met the criteria above indicated and it amply manifests that the court did not abuse its discretion.

Affirmed. Costs on the appellant.